UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ JUL 1 ⌄ ★

BROOKLYN OFFICE

------------------------------------------------------- X
:
THURMAN MANSON,                                        :
:
                              Petitioner,              :     **MEMORANDUM
                                                      :     DECISION AND ORDER**
         -against-                                    :
                                                      :     05-CV-3412 (BMC)
GAIL HAPONIK, Acting Superintendent,                  :
Green Haven Correctional Facility,                    :
                                                      :
                              Respondent.             :
:
------------------------------------------------------- X

**COGAN**, District Judge.

        Petitioner, Thurman Manson, is currently incarcerated at Green Haven

Correctional Facility pursuant to a February 19, 2002 King's County jury conviction for

second-degree murder and second-degree criminal possession of a weapon, N.Y. Penal L.

§§ 125.25(1) and 265.03(2).  He petitions this Court for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254 after exhausting his claims in the state court system.  He argues that

he was denied his right to a fair trial because the trial court found facts for the jury,

lowering the prosecution's burden to prove every element of the crime beyond a

reasonable doubt.

        Petitioner has failed to establish grounds for relief and, accordingly, the petition is

DENIED.

                                **BACKGROUND**

**I.  Procedural History**

        In December 2003, petitioner appealed his conviction to the Appellate Division,

Second Department, raising the same claim that he raises here plus a claim that the trial

court violated the notice requirement of N.Y.C.P.L. § 310.30 by failing to notify defense counsel of a juror note before responding to it. The Appellate Division affirmed the conviction on June 14, 2004, holding that petitioner's notification claim was unpreserved for appellate review and that the trial judge gave proper jury instructions. The Court of Appeals denied leave to appeal on August 4, 2004.

Petitioner filed the instant petition on July 11, 2005. The petition, initially filed *pro se*, provided a recitation of the facts underlying the claims of his case without alluding to any particular legal theory upon which relief might be granted. In light of petitioner's *pro se* status, Magistrate Judge Lois Bloom, by Order dated May 1, 2006, construed the petition as seeking review on the same grounds that petitioner raised before the Appellate Division, i.e., both the notification claim and the jury instruction claim. Subsequently, petitioner was able to obtain counsel who, upon leave of the Court, submitted a supplemental memorandum of law on November 30, 2006. The memorandum only addressed petitioner's jury instruction claim, and I therefore construe the petition as only raising that claim, not the notification claim.

## II. The Trial

On December 4, 2000, the New York City Police Department responded to a 911 call at 488 East 94th Street in Brooklyn, NY. Police officers found Gilbert Manson, petitioner's father, on the floor of his apartment with a gunshot wound to the back of his head and a semi-automatic pistol in his right hand. They also found petitioner lying on the floor of one of the bedrooms in the apartment.

According to testimony at trial, Emergency Medical Technicians ("EMTs") examined petitioner for injuries. EMT Robert Hunt testified at trial that petitioner

2

claimed he had been hit and did not remember anything about what happened after that. Petitioner was transported to Brookdale Hospital and later to the police precinct for further questioning by Detectives Tricolla and Hector.

The detectives testified at trial that petitioner initially told them the same story he told the EMTs. However, about three hours later, he changed his story. According to a videotaped statement taken by the detectives, petitioner and his father had been arguing about his unemployment and $300 that he had borrowed. Petitioner explained on the tape that his father went into the bedroom to get a pistol, the argument continued, and the gun accidentally went off in the commotion, shooting the victim in the head. Although petitioner did not testify at trial, this videotaped statement was played for the jury.

In addition to the videotaped statement, the prosecution presented considerable circumstantial evidence of petitioner's guilt. Evidence presented at trial suggested that the victim died on December 2, 2000, two days before the police found petitioner "unconscious" in his apartment. Testimony by EMT Hunt suggested that petitioner was only pretending to be unconscious and suffered from no apparent injuries. Additionally, testimony at trial revealed that petitioner used the deceased's credit card to purchase merchandise from the Home Shopping Network in the intervening days.

At the close of the trial, the jury received detailed instructions of their responsibilities. This included an explanation of the charges brought against petitioner, the presumption of innocence, the elements of each of these crimes (including identification), and the prosecution's burden to prove each of the elements beyond a reasonable doubt in order to convict. Petitioner does not challenge this initial instruction.

3

On the second day of deliberations, several jurors submitted questions about various pieces of evidence and trial concerns. One such note from juror number twelve read: "My jurors are saying I as a juror can't come to my own conclusion about possibly a third person involved because the prosecution lack of evidence" [sic]. Another note from juror number eight read:

> Do you know that the gentleman who says <u>not guilty</u> says that he was arrested already and if not mistaken says he did two years for what he was arrested for. So he may have a vendetta against the system. He should not be on this team. This is in regards to juror number twelve.

(emphasis in original).

The judge met individually with juror number twelve to address his alleged past-convictions. After determining that the juror was not a felon, and therefore eligible to participate in deliberations, the judge addressed the rest of the questions in front of the entire jury and counsel. In response to juror number twelve's question, the judge explained:

> There are two theories of this case. There is one, the defendant's theory which was put in through the tape and came out on cross examination, and then there's the People's theory which you heard evidence of. Remember I said don't speculate, don't be detective, don't do anything. If it's not evidence in here, it's not in the case. That goes for all of you, not anyone in particular. There's only two theories here. We don't think what should have been done, what could have been done, what ought to have been done. Those are your responsibilities to consider, the evidence or lack of evidence. And you only have two theories in front of you, the defendant's theory as put on in the tape and the People's theory.
>
> The burden is on the People, not on the defendant. But it's on the People to prove beyond a reasonable doubt their theory. But there's nothing else you can consider other than evidence that has come before you. . . . The burden is on the People to prove their case beyond a reasonable doubt. But the only possible theories of what happened here are the defendant's and the People's, and the People, it's their obligation to prove their theory

4

beyond a reasonable doubt. Defendant doesn't have to prove or disprove anything. . . . You have to go by the evidence here or the lack of evidence.

After hearing these instructions, the jury went back to its deliberations. Defense counsel then objected to the instructions given in response to juror number twelve's note. His argument was that the judge's instructions came too close to commenting on the facts of the case and may have limited the juror's exploration of the facts.

Later that day, the jury returned a guilty verdict.

## DISCUSSION

### I. Notification Claim

Since petitioner failed to raise the notification claim in his petition and subsequently abandoned the claim in his supplemental memorandum, I deem this claim withdrawn. However, even if I were to consider the claim, it would be procedurally barred under New York's contemporaneous objection rule. See Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006).

### II. Jury Instruction Claim

#### A. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, I review petitions for habeas corpus by a prisoner in state custody in accordance with the deferential standard codified at 28 U.S.C. § 2254 (d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Claims that were adjudicated on the merits in state court proceedings will be given AEDPA deference on federal habeas review. 28 U.S.C. § 2254 (d). A state court has adjudicated a claim on the merits when "it disposes of the claim and reduces its disposition to [a] judgment" that either "fairly appear[s] to rest primarily on federal law or to be interwoven with federal law" and does not rest on "a clear and express statement of reliance on a state procedural bar." See Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006).

Since it is undisputed that the state court reviewed petitioner's jury instruction claim on the merits, this Court will review the claim under the AEDPA deferential standard.

### B. The Merits

The thrust of petitioner's argument is that the Appellate Division violated his right to due process as interpreted by the Supreme Court in In re Winship, 397 U.S. 358, 90 S.Ct. 1068 (1970), when it affirmed the trial court's conviction and upheld the adequacy of the trial court's jury instructions. Petitioner argues that by limiting the jury to the "defendant's theory as put on in the tape" and "the People's theory," the trial judge lowered the prosecution's burden to prove every element of the crime beyond a reasonable doubt. Therefore, petitioner claims, the Appellate Division's affirmation of

6

the conviction was an unreasonable application of clearly established federal law as pronounced by the Supreme Court.

In Winship, the Supreme Court confirmed the well-established rule that the "due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Id. at 364, 90 S.Ct. at 1073. This standard plays a "vital role in the American scheme of criminal procedure" and is "indispensable . . . in applications of . . . criminal law." Id. at 363-64, 90 S.Ct. at 1072.

As is relevant here, a jury instruction violates Winship when it resolves an element of the crime, alleviating the jury's role as fact-finder and lowering the prosecution's burden of proof. Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450 (1979); see also United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310 (1995) (instructions that eliminated element of "materiality" from jury's consideration violated petitioner's due process rights). This can happen, for example, when the judge tells "the jury that it must infer [a] presumed fact if the State proves certain predicate facts." Francis v. Franklin, 471 U.S. 307, 314, 105 S.Ct. 1965, 1971 (1985).

"As a general matter, a jury charge in a state trial is a matter of state law and is not reviewable in a federal habeas corpus proceeding absent a showing that the alleged errors were so serious as to deprive the petitioner of the constitutional right to due process." Jordan v. Marshall, 06 Civ. 4074 (GEL), 2006 U.S. Dist. LEXIS 74244 at *3-4 (S.D.N.Y. Oct. 10, 2006) (quoting Godfry v. Irwin, 871 F. Supp. 577, 581 (W.D.N.Y. 1994). Thus, in order to succeed on this claim, petitioner must show (1) that the jury

instruction is erroneous *and* (2) that it violated his Constitutional right to due process. Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 400 (1973). Moreover, it must be "reasonably likely" that the jury applied the instruction in a way that violated petitioner's rights.[1] Estelle, 502 U.S. at 72, 112 S.Ct. at 482; Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198 (1990).

In making this determination, the challenged portion of the instruction cannot be viewed in isolation. Middleton v. McNeil, 541 U.S. 433, 437, 124 S.Ct. 1830, 1832 (2004). The court must view it in the context of the overall charge to determine if "the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." Id. at 437, 124 S.Ct. at 1832 (quoting Estelle, 502 U.S. at 72, 112 S.Ct. at 482). Thus, unless it is "reasonably likely" that the jury reached its verdict by applying a standard lower than proof beyond a reasonable doubt, petitioner's conviction will not be overturned. See Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir. 1996).

## 1. The Challenged Instruction Was Not Erroneous

Under New York law, a defendant is entitled to a jury charge that is fair to his theory of the defense as long as any reasonable view of the evidence could support a finding of it. See Suriel, 2006 U.S. Dist. LEXIS at *27. This does not mean, however, that a defendant is entitled to a jury charge on any possible attenuated theory of the defense that could exist in the record. The defendant must actually *raise* the theory in order to benefit from this rule.

---

[1] Petitioner argues that the court must look at how a "reasonable juror could have interpreted the instruction" in order to determine if he was denied his constitutional rights. Sandstrom, 442 U.S. at 514, 99 S.Ct. at 2454. The Supreme Court expressly rejected this standard in Boyde, 494 U.S. 370, 110 S.Ct. 1190, holding that the standard is "whether there is a reasonable likelihood that the jury applied the instructions" in a way that violated petitioner's constitutional rights. Id. at 380, 110 S.Ct. at 1198.

Here, petitioner did not raise the third-person theory during trial. Moreover, the mere fact that petitioner's "hit in the head" story was mentioned at trial does not mean that there is evidence of a defense *theory*. All that exists on the record is testimony from prosecution witnesses that petitioner initially claimed that he was "hit in the head," but that he later abandoned this story for a new explanation: that he and his father were involved in an argument when the gun when off. Since this is the only theory that the defense presented at trial, it is the only theory for which petitioner is entitled to a jury charge.[2]

For these reasons, I find that the trial court's jury instruction was not erroneous.

## 2. Even Assuming The Instruction Was Erroneous, The Error Did Not Violate Petitioner's Due Process Rights

Petitioner argues that when the trial judge limited the defense's theory to "as put on in the tape," he eliminated from the jury's consideration evidence that was presented on cross-examination, including evidence that could give rise to an inference that a third person allegedly hit him on the head. This, petitioner claims, resolved a factual issue for the jury and lowered the prosecution's burden to prove the element of "identification" beyond a reasonable doubt.

Petitioner's argument is unavailing. The trial judge merely instructed the jury to refrain from speculating about possible theories that did not appear on the record. Petitioner argues that by limiting the jury to "the defendant's theory as put on in the tape

---

[2] It should be noted that petitioner had the right to raise both defenses even if they are conflicting. See Mathews v. United States, 485 U.S. 58, 108 S.Ct. 883 (1988). However, petitioner failed to raise the "hit in the head" theory entirely.

and the People's theory," "it was not permissible for a juror to doubt that petitioner was guilty of the acts leading to the decedent's death, given that neither party offered such a theory in opening statements or summation." While we review such claims in the context of the entire charge, even in isolation the alleged error does not make such a bold statement.

Petitioner focuses too narrowly on one sentence in the supplemental instruction instead of looking at the entire charge.[3] Petitioner ignores the fact that six sentences earlier in the supplemental instruction, the judge defines the defense's theory as "put in through the tape and came out on cross examination." Additionally, the allegedly erroneous statement was surrounded by a slew of constitutionally firm instructions, including additional recitations that the burden of proof was on the prosecution. In light of this, I cannot find that describing the defense theory as that which was "put on in the tape," taken in context with the rest of the charge, so infected the entire trial that it deprived petitioner of his due process rights.

The fact that the allegedly erroneous instruction occurred in the supplemental instruction is of no impact on our analysis. Since a court must view the alleged error in the context of the overall charge, <u>Cupp</u>, 414 U.S. at 146-47, 94 S.Ct. at 400, errors in a supplemental instruction must be viewed in light of both the main charge and all of the supplemental instructions. <u>Manning v. Walker</u>, No. 99 Civ. 5747, 2001 U.S. Dist. LEXIS 109 (E.D.N.Y. Jan. 3, 2001), <u>Estrada v. Senkowski</u>, No. 98 Civ. 7796, 1999 U.S. Dist. LEXIS 17946 (S.D.N.Y. Aug. 16, 1999); <u>see also</u> <u>Rock v. Coombe</u>, 694 F.2d 908 (2d

---

[3] Indeed, even a portion of the Appellate Division's decision seems to misstate the content of the instruction.

Cir. 1982) (no undue influence where the alleged erroneous instruction was surrounded by other balanced instructions; the judge repeatedly explained the prosecution's burden of proof; and the jury deliberated for five hours after the supplemental instruction); Lyon v. Senkowski, 109 F. Supp. 2d 125 (W.D.N.Y. Aug. 7, 2000) (jury instruction error "in the midst of a balanced charge" does not rise to the level of a violation) (quoting Rock, 694 F.2d at 916).

Arroyo v. Jones, 685 F.2d 35 (2d Cir. 1982), upon which petitioner relies, is distinguishable. There, the erroneous instruction was unaccompanied by qualifying language on the burden of proof; moreover, the erroneous instruction was the last sentence that the jury heard before it reached a verdict thirty minutes later. The Second Circuit held that the charge made a special impression on the jurors and thus violated the petitioner's due process rights. Even though the correct instruction was given in the main charge, the jury's three requests for more information indicated that the jurors did not understand it. Therefore, the main charge did not cure the subsequent erroneous instruction.

Here, petitioner's main jury charge was not challenged by either side. The trial judge also reinstructed the jury on the correct burden of proof throughout the supplemental instructions. See Rock, 694 F.2d 908 (distinguishing its facts from Arroyo and finding no constitutional error where erroneous supplemental instruction was surrounded by other balanced instructions).

Petitioner also argues that since there is reason to believe that juror number twelve was leaning toward a not-guilty vote, the timing of the unanimous decision

"strongly supports the likelihood that the supplemental charge forced at least one juror

. . . to believe, erroneously, that his conclusion was an impermissible one, thereby

acquiescing to the court's efforts to bring about a verdict." The mere fact that the jury

reached a unanimous decision after a supplemental instruction does not indicate a

violation of petitioner's due process rights.  For example, <u>Allen</u> charges – supplemental

instructions that encourage deadlocked juries to reach a verdict – are constitutional as

long as such encouragement is not coercive.  <u>United States v. Crispo</u>, 306 F.3d 71 (2d

Cir. 2002) (where judge's two <u>Allen</u> charges were not considered coercive even though

jury was deadlocked 11-1).  All that the record here shows is that following the

supplemental instruction, the jurors were able to come to a unanimous decision to

convict.  There is no indication that any of the jurors were coerced into doing so or were

unduly influenced by the supplemental instruction.

Finally, an erroneous instruction that affects the burden of proof may be cured if

the judge also repeatedly instructs the jury as to the proper burden of proof.  <u>See Beverly

v. Walker</u>, 118 F.3d 900 (2d Cir. 1997) (while part of jury instruction may have shifted

burden of proof to defendant, such error was cured by judge's repeated statements on the

presumption of innocence and the prosecution's burden of proof beyond a reasonable

doubt).  Here, the judge gave the "beyond a reasonable doubt" instruction to the jury in

the main charge and he repeated it three times in the supplemental instruction.  Thus, the

judge's repeated instructions on reasonable doubt effectively cured any possible error in

the supplemental charge.

I can find no evidence suggesting that the supplemental charge as a whole, when

taken together with the main charge, made it reasonably likely that the jury understood

12

the instruction to create a presumption that petitioner was the person who shot the gun and killed the victim. See Boyde, 494 U.S. at 380, 110 S.Ct. at 1198. In both the main and supplemental charges, the trial judge made it very clear where the burden lay. See Smith v. Riley, No. 90 Civ. 3094, 1995 WL 1079778 (E.D.N.Y. Jan. 26, 1995) (finding that failure to instruct that the burden of proof applies to each element of the offense separately does not rise to a constitutional error).

The supplemental charge was given only one day after the main charge. This suggests that the undisputed main charge was still relatively fresh in the jury's mind at the time the trial court gave the allegedly erroneous instruction. Finally, any possible doubt that petitioner argues could have resulted from his "hit on the head" theory is heavily outweighed by the evidence against him, including the fact that the victim was killed two days before petitioner alleges that he was hit on the head.

## CONCLUSION

For the reasons stated above, I find that the Appellate Division's determination was not an unreasonable application of clearly established federal law. Petitioner's habeas corpus petition is therefore DENIED. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253.

**SO ORDERED.**

/S/
_____
U.S.D.J.

Dated: Brooklyn, New York
      July 13, 2007

13